UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **YUGOIMPORT SDPR J.P., et.al.** : | |
| : | |
| *Plaintiffs* : | |
| : | 1:06 cv 00589 RMU |
| vs. : | |
| : | |
| **THE UNITED STATES** : | |
| **DEPARTMENT OF THE** : | |
| **TREASURY, et.al.** : | |
| : | |
| *Defendants* : | |

## OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE COMPLAINT

COME NOW plaintiffs, YUGOIMPORT SDPR JP (hereinafter "Yugoimport") and MFK Corporation Ltd. of Uganda, ("MFK," collectively with Yugoimport "Plaintiffs"), by and through undersigned counsel, and, pursuant to F.R. Civ. Proc. 12, opposes the Defendants' Motion to Dismiss the Complaint and, in opposition thereto, respectfully refer this Honorable Court to the annexed memorandum of points and authorities.

WHEREFORE, by all these presents, counsel for plaintiffs prays that the instant motion be denied.

Respectfully submitted,

/s/

Philip M. Musolino, Esq. #294652
*Musolino & Dessel*
1615 L Street, N.W., Suite 440
Washington, D.C. 20036
(202) 466-3883
*Voice:* (202) 466-3883
*Fax:* (202) 775-7477
*Email:* pmusolino@musolinoanddessel.com

_/s/_ 
Sylvia J. Rolinski, Esq. # 430573
*Rolinski & Suarez, LLC*
14915 River Road
Potomac, Maryland 20854
*Voice*: (240) 632-0903
*Fax*:    (240) 632-0906
*Email*:  srolinski@rolinski.com

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **YUGOIMPORT SDPR J.P., et.al.** : | |
| *Plaintiffs* : | |
| : | 1:06 cv 00589 RMU |
| vs. : | |
| : | |
| **THE UNITED STATES** : | |
| **DEPARTMENT OF THE** : | |
| **TREASURY, et.al.** : | |
| *Defendants* : | |

### ORDER

This matter having come before this Court on Defendants' Motion to Dismiss the Complaint, and opposition thereto, it is, for good cause shown this ___ day of _____, 200_:

ORDERED, that the instant motion be and is hereby denied, and it is

FURTHER ORDERED that this matter is set for a scheduling conference on _____.

SO ORDERED.


_____
Ricardo M. Urbina, Judge
United States District Court for the
District Columbia

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

YUGOIMPORT SDPR J.P., et.al.     :
                                 :
         *Plaintiffs*             :
                                 :         1:06 cv 00589 RMU
    vs.                          :
                                 :
THE UNITED STATES                :
DEPARTMENT OF THE                :
TREASURY, et.al.                 :
                                 :
         *Defendants*             :

## MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE COMPLAINT

Plaintiff Yugoimport is a corporation organized under the laws of Serbia and Montenegro (Yugoslavia) and is a "person" within the meaning of 5 U.S.C. § 551(1). Complaint, at ¶ 2. Co-plaintiff MFK is a corporation organized under the laws of Uganda, and is a "person" within the meaning of 5 U.S.C. § 551(1).4. Complaint, at ¶ 3.

Defendant the United States Department of the Treasury ("Treasury") is an agency of the United States within the meaning of 5 U.S.C. § 551(1). Complaint, at ¶ 4.

Co-defendant Office of Foreign Assets Control ("OFAC") is an "agency" within the U.S. Treasury Department and it administers and enforces economic and trade sanctions against targeted foreign countries, including Sudan, and including terrorism-sponsoring organizations, and international narcotics traffickers. Complaint, at ¶ 5.

Defendants seek dismissal of the Complaint. For the reasons set forth below, that motion must be denied.

## I. STATEMENT OF THE CASE

### A. Statement Of The Facts Alleged In The Complaint

On July 27, 2005, Plaintiff, by and through counsel in the District of Columbia directed by letter to Treasury and to OFAC a request for the following under the Freedom of Information Act ("FOIA"): All records related to, or identifying, or describing assets of the Republic of Sudan that have been blocked and the value and location of those assets; and all records relating to license applications that have been made, or are pending, or have been issued with regard to the Republic of Sudan ("The Requested Documents"). Complaint, at ¶ 6. A true and correct copy of that letter was appended to the Complaint as Exhibit A, and was adopted and incorporated therein by reference as if specifically set out therein.

On August 3, 2005, Treasury responded, *inter alia*, that a response would be sent "as soon as possible." Complaint, at ¶ 7. A true and accurate copy of that response was annexed thereto as Exhibit B, and was adopted and incorporated therein by reference as if specifically set forth therein.

On September 9, 2005, Plaintiffs, by and through counsel in the District of Columbia, directed by letter to Treasury and OFAC a request for information on the status of the July 27, 2005 request. Complaint, at ¶ 8. A true and accurate copy of that response, without the attachments, was annexed thereto as Exhibit C, and was adopted and incorporated therein by reference as if specifically set forth therein.

On September 14, 2005 Treasury responded that the request had been forwarded to OFAC. Complaint, at ¶ 9. A true and accurate copy of that response was annexed thereto as Exhibit D, and was adopted and incorporated therein by reference as if specifically set forth herein.

On January 3, 2006, Plaintiffs, by and through counsel in the District of Columbia, directed by letter to Treasury and OFAC a request for information on the status of the July 27, 2005 request. Complaint, at ¶ 10. A true and accurate copy of that response, without the

attachments, was annexed thereto as Exhibit E, and was adopted and incorporated therein by reference as if specifically set forth therein.

On January 10, 2005 Treasury responded that the request had been forwarded to OFAC. Complaint, at ¶ 11. A true and accurate copy of that response was annexed thereto as Exhibit F, and was adopted and incorporated therein by reference as if specifically set forth therein.

The Complaint explicitly alleged that "Plaintiffs have exhausted their administrative remedies." Complaint, at ¶ 21.

### B. Statement Of Proceedings

Plaintiffs filed the instant action against defendants under the Freedom of Information Act, 5 U.S.C. § 552, ("FOIA") on March 30, 2006.

On June 22, 2006, Defendants filed an Answer to the Complaint. The Answer, *inter alia*: admitted "that they have not yet formally asserted any exemptions in response to the FOIA Request...," Answer at ¶ 18; admitted that "they have not yet formally objected to or rejected the Request...," Answer at ¶ 19, affirmatively averred that Defendants, through counsel, suggested "...modifications to the request to enable more efficient processing by OFAC," *id.*, and denied Plaintiffs' averment that Plaintiffs' had exhausted administrative remedies. Answer at ¶ 21.

Defendants' Motion to Dismiss the Complaint (the "Motion") followed.

### II. STANDARD OF REVIEW

Defendants seek dismissal on two grounds: the named Plaintiffs lack standing because the FOIA Request itself was made in the name of undersigned counsel, Motion, at 7-8; and, "(b)ecause Plaintiffs have failed to pay the required fees, which constitutes a failure to exhaust administrative remedies, the Complaint should be dismissed for failure to state a claim." Motion, at 2, and *see* Motion, at 7-10.

"FOIA cases are typically and appropriately decided on motions for summary judgment." *Sliney v. Federal Bureau of Prisons* 2005 WL 3273567 *3 (D.D.C. 2005) (Walton, J.), case cited in Motion at 9, and *see, e.g., Keen v. Federal Bureau of Investigation* 2006 WL 2844908 (D.D.C.

3

2006) (Kennedy, J.) (decided on summary judgment), case cited in Motion at 9, *Farrugia v. Executive Office for United States Attorneys* 366 F.Supp. 2d 56, 57 (D.D.C. 2005) (denying motion for partial summary judgment on issue of exhaustion), case cited in Motion at 8, *Maydak v. Department of Justice* 362 F.Supp. 2d 316, 319 (D.D.C. 2005) (trial court disposes of cross-motions for summary judgment), case cited in Motion at 5, *Center to Prevent Handgun Violence v. U.S. Department of the Treasury* 981 F.Supp. 20, 22 (D.D.C. 1997) (decided on summary judgment), case cited in Motion at 9, *Trueblood v. United States Department of the Treasury* 943 F.Supp.64, 67 (.D.D.C. 1996) (decided on summary judgment), cited in Motion at 5.

However, in *Judicial Watch Inc. v. Federal Bureau of Investigation* 190 F.Supp.2d 29 (D.D.C. 2002), this court concluded that: "…the plaintiff has failed to exhaust its administrative remedies. Accordingly, the court lacks subject matter jurisdiction under Rule 12(b)(1) and the court need not address the defendant's argument pursuant to 12(b)(6)." At 33. But *see Sliney, supra* ("the FOIA's exhaustion requirement … is not jurisdictional." At 3, citing *Hidalgo v. FBI* 344 F.3d 1256, 1258 (D.C. Cir. 2003).

Defendants do not seek summary judgment pursuant to Fed.R.Civ.P. 56, nor do they identify with any specificity the Rule – and thus the applicable standard – under which they elect to proceed. Though the filing is characterized by the Defendants as a motion to dismiss, Defendants attach exhibits which are clearly outside the pleadings[1].

Under F.R. Civ.P. 12 (b):

> if on a motion … to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

---

[1] The attachments to the Motion were unaccompanied by any authenticating declarations or affidavits. See F.R.Civ.P. 56(e).

4

"...(T)he conversion of a Rule 12(b)(6) motion [2] into one for summary judgment under Rule 56 when the court considers matters outside the pleadings is 'strictly enforce[d]' and 'mandatory.'" *Global Network Communications, Inc. v. City of New York*, ___ F.3d ___, 2006 WL 2106632*4 (2nd Cir. 2006). While conversion is not required where the trial court considers material which is "integral" to the complaint or "an appropriate subject for judicial notice." *Id.*, at 5, events which took place after the filing of the case cannot be considered to be so integral to the complaint that conversion can be avoided. As the court in *Global Network Communications, Inc., supra*, made clear: "...(W)ith respect to whether the materials considered were integral to Global's complaint, a necessary prerequisite for that exception is that the "plaintiff *rely* on the terms and effect of the document in drafting the complaint; mere notice or possession is not enough (internal brackets and ellipses omitted, emphasis in original)."

While Plaintiffs do not dispute the authenticity of any of the Motion's exhibits, Plaintiffs nonetheless object to their use to the extent that Defendants proceed under 12(b)(6), because Plaintiffs are deprived of their procedural rights under Rule 56, including in particular Plaintiffs' rights under Rule 56(f).

In the absence of conversion, this standards for disposition of a motion to dismiss under 12(b)(6) are well-known, and are applicable where the motion contains jurisdictional or standing challenges.

> As the standing issue arose on a motion to dismiss, the plaintiffs' burden is simply to make the requisite *allegations*. "At the pleading stage, general factual allegations ⋯ may suffice, for on a motion to dismiss we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'" *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561, 112 S.Ct. 2130, 2137, 119 L.Ed.2d 351 (1992) (citation omitted). See also *Bennett v. Spear*, 520 U.S. 154, 171, 117 S.Ct. 1154, 1165, 137 L.Ed.2d 281 (1997) (calling burden of allegation at the pleading stage "relatively modest"); *Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 260-61, 97 S.Ct. 555, 560-61, 50 L.Ed.2d 450 (1977); *Warth v. Seldin*, 422 U.S. 490, 501, 95 S.Ct. 2197, 2206, 45 L.Ed.2d 343 (1975). Dismissal for want of subject matter jurisdiction should occur only if "'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Empagran S.A. v. F. Hoffman-*

---

[2] But *see* discussion below on the court's resort to other evidence for purposes of its examination jurisdiction.

5

*LaRoche, Ltd.,* 315 F.3d 338, 343 (D.C.Cir.2003) (quoting *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957)). Interestingly, the leading cases in our circuit finding standing on the basis of third parties' response to alleged excessive agency stringency, *Block v. Meese,* 793 F.2d 1303 (D.C.Cir.1986) (Scalia, J.), and *Tozzi v. United States Dep't of Health and Human Servs.,* 271 F.3d 301 (D.C.Cir.2001), discussed below in detail, involved motions for summary judgment; despite the far more demanding standard appropriate there, we found the requisite causality and redressability.

*National Wrestling Coaches Ass'n v. Dept. of Educ.* 366 F.3d 930, 951 (D.C. Cir., 2004).

Again, however, Defendants' resort to materials outside of the pleadings triggers consideration of the distinctions between facial and factual challenges.

> A court ruling on a Rule 12(b)(1) motion to dismiss may consider documents outside the pleadings to assure itself that it has jurisdiction. (internal citations and quotation marks omitted)). The level of scrutiny with which the Court examines the allegations in the complaint that support a finding of jurisdiction, however, depends upon whether the motion to dismiss asserts a facial or factual challenge to the court's jurisdiction....
>
> Facial challenges, such as motions to dismiss for lack of standing at the pleading stage, attack...the factual allegations of the complaint that are contained on the face of the complaint. ...If a defendant mounts a "facial" challenge to the legal sufficiency of the plaintiff's jurisdictional allegations, the court must accept as true the allegations in the complaint and consider the factual allegations of the complaint in the light most favorable to the non-moving party.... The court may look beyond the allegations contained in the complaint to decide a facial challenge, as long as it still accepts the factual allegations in the complaint as true.... *Jerome Stevens Pharm., Inc. v. Food & Drug Admin.,* 402 F.3d 1249, 1253-54 (D.C.Cir.2005) ("At the pleading stage ···· [w]hile the district court may consider materials outside the pleadings in deciding whether to grant a motion to dismiss for lack of jurisdiction, the court must still accept all of the factual allegations in the complaint as true.")
>
> Factual challenges, by contrast, are addressed to the underlying facts contained in the complaint.... Where a defendant disputes the factual allegations in the complaint that form the basis for a court's subject matter jurisdiction, the court may not deny the motion to dismiss merely by assuming the truth of the facts alleged by the plaintiff and disputed by the defendant. Instead, a court deciding a Rule 12(b)(1) motion asserting a factual challenge must go beyond the pleadings and resolve any disputed issues of fact the resolution of which is necessary to a ruling upon the motion to dismiss.... (Internal citations, brackets, and quotation marks omitted).

*Lindsey v. U.S.* 448 F.Supp. 2d 37, 43. (D.D.C., 2006).


Thus, "(a) court deciding on motion under Rule 12(b)(1) must distinguish between a 'facial' attack and a 'factual' attack." *Osborn v. US*, 918 F.2d 724, 729 at fn. 6 (8th Cir. 1990), citing *Mortensen v. First Federal Savings & Loan Ass'n.*, 549 F.2d 884, 891 (3rd Cir.1977). And see *Aerolineas Argentinas v. US*, 77 F.3d 1564, 1572 (Fed. Cir. 1996). " … (F)actual challenges are subject to different standards," *NE Hub Partners, LP v. CNG Transmission Corp.* 239 F.3d 333, 341, fn. 7 (3rd Cir. 2001). A facial attack is addressed pursuant to 12(b)(6) standards. A factual attack triggers federal trial courts' "… wide latitude to hear evidence or engage in any other fact-finding that convinces them that subject matter jurisdiction is present or lacking." Colella, U. and Bain, A. *The Burden of Proving Jurisdiction Under the Federal Tort Claims Act: A Uniform Approach to Allocation*, 67 Fordham L.R. 2859, 2878 (May 1999). Absent discovery, therefore,[3] Plaintiffs will be denied a "… fair opportunity to define issues of fact … and to submit evidence …," *Foremost-McKesson, supra,* so that the trial court could "… ferret out the facts …" *Williams, supra,* in disposition of a factual challenge.

### III. ARGUMENT

#### A. Plaintiffs Are the Real Parties In Interest and Have Standing to Bring the Instant Action

"A requester means any person who makes a request for access to records." 31 C.F.R. Subtitle A, § 1.1(b)(10). Defendants contend that, because the named Plaintiffs in the instant litigation were not identified as the requesters in the FOIA Requests, they are not the requesters and they lack standing to bring the action. They are incorrect. [4]

---

[3] Plaintiffs would be entitled to discovery on, at least: the September 7, 2006 letter included as part of Defendants' Exhibit ("DX") L (the "September 7 Letter"); Defendants' recognition of the agency relationship between the signatory to the Requests and the clients; the basis for Defendants' determination that the request was commercial. *See* 31 C.R. Subtitle A, § 1.5(b)(2)(i) (determining commercial use " of the requester or the person on whose behalf the request is made …from the use specified in the request …."); and, Defendants' procedures and practices on requests from attorneys and other agents on behalf of clients.

[4] To the extent that the court nonetheless adopts Defendants' arguments, undersigned will seek, in conformity with *Wright v. Herman* 230 F.R.D. 1 (D.D.C.,2005), *Gov't of Guam v. Am. President Lines*, 28 F.3d 142, 149-51 (D.C.Cir.1994), *Confederate Mem'l Ass'n v. Hines,* 995 F.2d 295, 299-300 (D.C.Cir.1993).and Fed.R.Civ.P. 17 the amendment of the complaint for the sole purpose of adding or substituting as plaintiff the signatory to the FOIA Request.

Defendants do not dispute that undersigned counsel – as the signatory to the FOIA Request – wrote "I am an attorney seeking information for use in a current case." Motion, at 7. Defendants further insist that "*Plaintiffs* are using the FOIA to obtain discovery from the government for their own commercial litigation purposes (emphasis added)." Motion, at 9, n.2.

Defendants also do not dispute, nor can they, that the fee determination in issue is based on a determination of commercial use.

> A commercial use request refers to a request from or on behalf of one who seeks information for a use or purpose that furthers the commercial, trade, or profit interests of the requester or the person on whose behalf the request is made, which can include furthering those interests through litigation. The bureaus may determine from the use specified in the request that the requester is a commercial user.

31 C.F.R, Subtitle A § 1.5 (b)(2)(i). At least for purposes of this motion, therefore, Plaintiffs are entitled to the finding and the inference that the explicitly identified Requester disclosed in the Request that he was acting "on behalf of" a client and was seeking to further the clients' "through litigation." *Id.*

That inference confers standing, because standing determinations under FOIA differ in no respect from standing determinations under other claims and causes of action.

> The Supreme Court has recognized that Congress may enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute....
>
> A common example of such a statute is ...FOIA .... Anyone whose request for specific information has been denied has standing to bring an action; the requester's circumstances-why he wants the information, what he plans to do with it, what harm he suffered from the failure to disclose-are irrelevant to his standing..... The requester is injured-in-fact for standing purposes because he did not get what the statute entitled him to receive.

*Zivotofsky ex rel. Ari Z. v. Secretary of State* 444 F.3d 614, 617-18(D.C. Cir. 2006). Moreover, the standing determination is, in many cases, concomitant with real party in interest determinations under Fed.R.Civ.P 17. As the Court explained in *APCC Services, Inc. v. Sprint Communications Co.* 418 F.3d 1238, 1245 (D.C. Cir. 2005):

> Sprint and AT & T counter with the observation that Rule 17(a) and the requirement of standing "are governed by different standards and serve distinct

8

purposes." That is true enough, as far as it goes: Standing depends in part upon elements "clearly unrelated to the rather simple proposition set out in Rule 17(a)," FED. PRAC. & PROC. § 1542 at 330. But standing also depends in part, as does a plaintiff's status as the real party in interest, upon having "a personal interest in the controversy," *Whelan v. Abell,* 953 F.2d 663, 672 (D.C.Cir.1992), and that is the only requirement at issue in the IXCs' challenge to the aggregators' standing in this case.

We see no basis for distinguishing the personal stake required under Rule 17(a) from the interest required for standing.

Defendants do not contend that Plaintiffs had no actual "personal stake" in the demand for information. To the contrary, Defendants argue that the information was being requested to enable Plaintiffs to seek recovery on their default judgments against Sudan and the Bank of Sudan. Defendants only contend that Plaintiffs were not the signatories to the Request.

But they point to no statute or regulation which requires such specificity, and 31 C.F.R, Subtitle A § 1.5 (b)(2)(i), set out above, clearly contemplates that a Requester would make its request "on behalf of" the interests of another person. Instead, Defendants rely on three District Court opinions which do not fit squarely within the facts of this case in that none identifies an attorney in a current case, and none involves an admission by the Defendants – at least as of the date of the Motion – of their understanding that the information was being sought for the benefit of the named Plaintiffs.

"The relationship between client and attorney...is a quintessential principal-agent relationship." *C.I.R. v. Banks* 543 U.S. 426, 436, 125 S.Ct. 826, 83 (2005). There can be no doubt that the signatory to the Request was acting as the agent of the Plaintiffs. To the extent that the actual underlying interest is the test, therefore, Plaintiffs clearly have standing.

Even assuming *arguendo* that the standing test turns on the identification to the Defendants of the requester, particularly in the absence of any statutory or regulatory requirement, non-controversial principles of agency still support Plaintiffs' standing. In current parlance, Plaintiffs were, at the time of the Request, no less than unidentified principals.

9

" A principal is unidentified if, when an agent and a third party interact, the third party has notice that the agent is acting for a principal but does not have notice of the principal's identity." Restatement 3d AGENCY § 1.04 (2)(c). As unidentified principals, Plaintiffs hold the same enforcement rights as if they were the signatories. *See*, with respect to contract enforcement, Restatement 3d AGENCY § 6.03(1), (3).

No FOIA purpose or policy militates against the application of universal principles of agency to the enforcement of a FOIA request. Accordingly, Defendants' challenge to Plaintiffs' standing must be rejected.

### B. Defendants' Contention That Plaintiffs Have Failed To Exhaust Administrative Remedies Is Meritless

Defendants, relying entirely on the September 7, 2006 Letter, contend that Plaintiffs [5] were obligated as a consequence of that Letter to either pay the estimated fees or to pursue an administrative appeal. That argument fails because:

1. The Letter did not trigger any right or duty to commence an administrative appeal, nor did it purport to do so;

2. No administrative exhaustion could be triggered by a letter delivered after the initiation of the lawsuit.

### 1. The Letter Did Not Trigger Any Right Or Duty To Commence An Administrative Appeal, Nor Did It Purport To Do So

The September 7 Letter on which Defendants now rely did not trigger any right or duty to commence an administrative appeal because it did not contain the requisite information regarding an appeal and because there is no right to an administrative appeal which contests the reasonableness of the estimated fees.[6]

---

[5] Of course, to the extent that Defendants insist that the FOIA Requestor is undersigned only, Defendants cannot contend that a Letter from Defendants to undersigned should be deemed to trigger obligations on the part of the named Plaintiffs. The September 7 Letter was addressed only to undersigned.

[6] Defendants presumably do not argue that they can enforce the unilateral 30 day deadline set out in the Letter, and the threatened treatment of the request as withdrawn. Defendants cite absolutely no authority for the proposition that a party can unilaterally fix a deadline to respond to a letter and excuse itself from its explicit statutory, regulatory or contractual obligations if the recipient declines to respond to the deadline.

First, the Letter did not contain the mandatory notice of the right to appeal. In order to trigger an administrative appeals process, the agency is required to "immediately notify the person making such request ... of the right of such person to appeal to the head of the agency any adverse determination." 5 U.S.C. 552(a)(6)(A)(1)(2). And *see Oglesby v. United States Department of the Army* 90 F.2d 57, 61, 65 (D.C. Cir. 1990) ("A response is sufficient for purposes of requiring an administrative appeal if it includes: ... notice of the right of the requester to appeal to the head of the agency...."), *see also Keen supra*, at 1 (agency "notified Keen that he had a right to appeal ....").

On that basis alone Defendants' exhaustion argument must fail. [7]

Secondly, there is no right to take an administrative appeal of the reasonableness of the estimated fees.

"Appeal means a request for a review of an agency's determination with regard to a fee waiver, category of requestor, expedited processing, or denial in whole or in part of a request for access to a record or records." 31 C.F.R. Subtitle A, § 1.1(b)(2). Of those appellate grounds, only "the agency's determination with regard to a fee waiver" can be applicable to Defendants' motion, and that ground does not include challenges to the reasonableness of the fee determination.

> Fees may be waived or reduced on a case-by-case basis in accordance with this paragraph by the official who determines the availability of the records, provided such waiver or reduction has been requested in writing. Fees shall be waived or reduced...when it is determined that a waiver or reduction of the fees is in the public interest because furnishing the information is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the in the commercial interest of the requestor.

---

Nor do Defendants address the ability of an agency to fix such a 30-day deadline when its own Appeals deadline is 35 days. 31 C.F.R. (i)(1)(2).

[7] The Letter was obviously not intended, in any event, to be a final resolution of the matter, because it invited the Requestor to "narrow the scope of your request in order to reduce fees...." DX L. And see 31 C.F.R. 1.7(e)(1) ("the requestor shall also be given an opportunity to reformulate the request in an attempt to reduce fees.")

11

31 C.F.R. 1.7(d)(1). "Appeals from denials of requests for waiver or reduction of fees shall be decided in accordance with the criteria set forth in paragraph (d)(1) of this section...." 31 C.F.R. 1.7(d)(1). And *see* 31 C.F.R. Subtitle A, § 1.5(b)(7), 31 C.F.R. Subtitle A, § 1.5(i)(1)(i).

Nothing in those regulations provides for an administrative appeal of the reasonableness of estimated fees. *See Keen, supra,* at1, n.2, assuming without deciding that a dispute over photocopying charges is an appeal from a denial of a request for a waiver or reduction of fees.

"Fees shall be limited to reasonable standard charges for document search, duplication, and review when records are requested for commercial use."5 U.S.C. 552(a)(4)(A) ( ii)(I). The Defendants do not, in their Motion, contend that the estimated fees were reasonable either as a matter of law or pursuant to any fact-finding necessitated by the Motion. They limit their argument to the failure to exhaust any administrative challenge as an ostensible consequence of the September 7 Letter. Because, as noted above, that Letter created no appellate exhaustion requirement, the determination of the reasonableness of the estimated fees rests with this court.

2. No Administrative Exhaustion Requirement Could Be Triggered By A Letter Delivered After The Initiation Of The Lawsuit.

Defendants incorrectly contend that the determination of the exhaustion requirement is unaffected by the fact that the lawsuit was filed before the so-called adverse determination in the September 7 Letter. Motion, at 8-9.

In *Oglesby, supra,* cited in Motion at 8, the Court treated the concept of constructive exhaustion of administrative remedies, where the agency response was untimely under FOIA. The Court determined that: "an administrative appeal is mandatory if the agency cures its failure to respond within the statutory period by responding to the FOIA request *before suit is filed* (emphasis added). At 63. The Court added: "We therefore interpret 5 U.S.C. §§ 552 (a)(6)(A) and (C) as requiring the completion of the administrative appeal process before courts become involved, if the agency has responded to the request *before suit is filed*. (emphasis added)." The *Oglesby* court rejected constructive exhaustion only in those circumstances where the agency responded, even if untimely, before the suit was filed.

12

Defendants seek to nullify *Oglesby* by arguing that "(t)he exhaustion requirement applies not only before the filing of a lawsuit – the obligation to pay reasonable fees (or to appeal from the refusal to waive those fees) exists "[r]egardless of whether the plaintiff 'filed' suit before or after receiving a request for payment (citations omitted)." Motion, at 8. But that argument fails because it conflates two separate concepts—the obligation to submit the fee issue to the administrative appellate process for resolution; and, the obligation to pay the fees. The application of constructive exhaustion under *Oglesby* does not excuse the fee payment obligation; it simply shifts the determination of that issue to the court, rather than the head of the agency charged with responsibility for administrative appeals.

Thus, the *Oglesby* Court's recognition of the necessity of paying fees in accordance with the statutory and regulatory scheme, Motion, at 9, did not in any way affect the application of the constructive exhaustion doctrine as it applies here, because, as the Court made clear: "In this case, only one of the six agencies met the initial statutory deadline, but all six completed their review and made their initial determinations on appellants' requests long before appellant brought suit ..." at 65. And *see Judicial Watch, Inc., supra*, at 33, cited in Motion ("the plaintiff filed suit after the defendant had already responded to its request."). At 8. *Accord, Sliney, supra,* cited in Motion at 9. At 1-2.

In *Trueblood v. Department of the Treasury* 943 F.Supp.64 (D.D.C. 1996), cited in Motion at 9, the court did not base its ruling on the exhaustion of administrative remedies. Indeed, the trial court determined on the merits those very issues – payment of the fee of $46.65, the reasonableness of which was apparently unchallenged, and plaintiff's ineligibility for a waiver. At 68-69.And in *Farrugia, supra*, cited in Motion at 8, the court did not decide defendant's motion for summary judgment. At 57.

Plaintiffs and Defendants are entitled to a resolution of the reasonableness of the estimated fees, but, because Defendants failed to respond before Plaintiffs filed suit, Defendants

could no longer insist that their initial determination be reviewed through their administrative appeals process. As the *Oglesby* Court wrote:

> Absent a statutory provision to the contrary, failure to exhaust is by no means an automatic bar to judicial review; courts usually look at the purposes of exhaustion and the particular administrative scheme in deciding whether they will hear a case or return it to the agency for further processing. At 61.

Those factors weigh fully against acceptance of Defendants' exhaustion claim.

Respectfully submitted,

Philip M. Musolino, Esq. #294652
*Musolino & Dessel*
1615 L Street, N.W., Suite 440
Washington, D.C. 20036
(202) 466-3883
*Voice*: (202) 466-3883
*Fax*: (202) 775-7477
*Email*: pmusolino@musolinoanddessel.com

Sylvia J. Rolinski, Esq. # 430573
*Rolinski & Suarez, LLC*
14915 River Road
Potomac, Maryland 20854
*Voice*: (240) 632-0903
*Fax*: (240) 632-0906
*Email*: srolinski@rolinski.com